UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| National Association of Home Builders of the United States *et al.*,<br><br>    *Plaintiffs*,<br><br>        *v.*<br><br>Montgomery County, Maryland,<br><br>    *Defendant.* | Case No. 8:24-cv-03024-PX |

**[PROPOSED] BRIEF OF *AMICUS CURIAE* PUBLIC HEALTH LAW CENTER, INC. IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Jon A. Mueller
Visiting Associate Professor
Director, Environmental Law Clinic
University of Maryland Carey School of Law
500 W. Baltimore St.
Baltimore, MD 21201-1786
JMueller@law.umaryland.edu
410-706-0590

Daniel Carpenter-Gold
Jamie Long
Public Health Law Center
Mitchell Hamline School of Law
875 Summit Ave.
St. Paul, MN 55105
Daniel.CarpenterGold@mitchellhamline.edu
651-290-7506

*Counsel for the Public Health Law Center*

## TABLE OF CONTENTS

Interest and Identity of Amicus ............................................................................................. 1

Summary of the Argument ..................................................................................................... 1

Argument ................................................................................................................................ 2

    I.    EPCA's Legislative History Demonstrates that It Is Not Meant to Preempt Regulations Like the Decarbonization Law ................................................................................ 2

        A.    EPCA's Evolution Demonstrates Congressional Intent to Preempt Only Appliance-Conservation Standards, Not Regulations Like the Decarbonization Act ................................. 3

        B.    The Legislative History Explains the Limited Scope of the Broadening Language in EPCA's Preemption Provision ................................................................................ 7

    II.    The Montgomery County Building Code Is Exempt from EPCA Preemption .................... 8

        A.    Prohibiting the Use of Some EPCA-Covered Appliances Does Not Make a Code Ineligible for the Code Exemptions ................................................................. 8

        B.    Plaintiffs' Allegations Misunderstand the Code Exemptions' Requirements ..................... 9

        C.    California Restaurant Association v. City of Berkeley Does Not Apply to the Code Exemptions ........................................................................................................ 14

Conclusion ............................................................................................................................ 15

Interest and Identity of Amicus

The Public Health Law Center (Center) is a public interest legal resource center dedicated to improving health through the power of law and policy. The Center helps local, state, national, Tribal, and global leaders promote health by strengthening public policies. These policies include regulations, such as all-electric building codes, that reduce the indoor and outdoor pollution caused by fossil-fuel combustion and mitigate climate change, which is among the greatest public-health threats today.

Summary of the Argument

The Energy Policy and Conservation Act (EPCA) preempts state and local energy-conservation standards. The law at issue in this case, Montgomery County Bill 13-22 (the Decarbonization Law), is not an energy-conservation standard, it is a regulation to limit fossil-fuel combustion in buildings in order to reduce air and climate pollution and promote public safety. *See, e.g.*, D.'s Mem. Law Supp. Mot. to Dismiss or, in the Alternative, Mot. Summ. J., ECF No. 18-1, at 5. The Center agrees with Defendant Montgomery County (the County) that EPCA does not preempt regulations like the Decarbonization Law.

The Center submits this brief to add two points for the Court's consideration. First, EPCA's legislative history supports the County's reading. In enacting and amending EPCA's preemption provisions, Congress focused entirely on energy conservation, with no mention of other types of regulations that might be affected. The drafters of EPCA and its subsequent amendments regularly referred to the laws that would be preempted as "standards" and "efficiency regulations." When the Department of Energy (DOE), tasked with implementing EPCA, determined that "rule[s] whose purpose is other than energy efficiency...would not appear to be preempted by" EPCA, 47 Fed. Reg. 14,424 (Apr. 2, 1982), Congress did not correct that assumption, despite overhauling other aspects of the law in response to other aspects of DOE's

1

determination. To read EPCA as preempting regulations like the Decarbonization Law requires assuming that Congress silently expanded EPCA preemption from energy conservation to a far broader range of environmental, health, and safety regulations, which is inconsistent with the legislative record.

Second, EPCA exempts the Montgomery County Building Code (County Code) from preemption. A building code is exempt from preemption under EPCA so long as it meets certain requirements, which ensure that the code does not require EPCA-covered appliances to meet standards that are more stringent than federal standards require. *See* 42 U.S.C. §§ 6297(f)(3), 6316(b)(2)(B). Plaintiffs do not dispute that the County Code meets these requirements prior to the implementation of the Decarbonization Law. Instead, they argue that the Decarbonization Law itself will violate these requirements because, they allege, it will prohibit some EPCA-covered appliances. But prohibiting the use of an appliance is completely different from requiring the appliance to meet certain efficiency standards. Therefore, the County Code will be protected from preemption even if the Decarbonization Law adds appliance prohibitions to it.

## Argument

### I. EPCA's Legislative History Demonstrates that It Is Not Meant to Preempt Regulations Like the Decarbonization Law

EPCA's legislative history indicates consistent congressional intent to create federal appliance conservation standards—regulations that directly address the energy efficiency of specific appliances—and to preempt state and local appliance conservation standards. Conversely, there is no indication that Congress intended the relevant portions of EPCA to preempt state or local regulations that do not set energy-conservation standards for appliances, such as the Decarbonization Law. Congress's intent to preempt only appliance conservation standards is clearest in the EPCA amendments that established the language at the core of this case, in the

National Appliance Energy Conservation Act (NAECA). Thus, Plaintiffs' application of EPCA preemption to the Decarbonization Law "would do violence to Congress's goal" and should be rejected. *Holland v. Pardee Coal Co.*, 269 F.3d 424, 432 (4th Cir. 2001).

> A. *EPCA's Evolution Demonstrates Congressional Intent to Preempt Only Appliance-Conservation Standards, Not Regulations Like the Decarbonization Act*
>> 1. EPCA Began as an Energy-Conservation Statute

Congress passed the Energy Policy and Conservation Act of 1975 (1975 EPCA) in the wake of the energy crisis of the early 1970's.[1] Pub. L. No. 94-163, 89 Stat. 871; *see also* S. Rep. No. 94-516, at 202-03 (1975) (Conf. Rep.) (discussing motivation for 1975 EPCA). The express purposes of the 1975 EPCA were to increase energy production and reduce energy consumption. 1975 EPCA § 2, 89 Stat. at 874 (current version at 42 U.S.C. § 6201).

The 1975 EPCA created a clear parallel between federal appliance conservation standards for covered appliances and the state and local regulations that would be preempted. To achieve its energy-conservation goals, the 1975 EPCA required the Federal Energy Administration (FEA), a precursor to the U.S. Department of Energy (DOE), to set nonbinding efficiency targets for manufacturers. If manufacturers did not meet those targets, the FEA would replace them with binding conservation standards. *Id.* § 325(a)(4)(B), 89 Stat. at 924. When the FEA created a binding federal standard for a given appliance, the 1975 EPCA would preempt any state or local "energy efficiency standard or similar requirement with respect to energy efficiency or energy use of" that appliance. *Id.* § 327(a)(2), 89 Stat. at 927. Thus, the 1975 EPCA's structure indicated a clear intent to apply preemption only to those state and local appliance conservation standards that would directly conflict with federal standards.

---

[1] The Center uses "EPCA" to refer to the law as periodically amended, and uses "1975 EPCA" to refer to the version of EPCA passed in 1975.

3

2. Changes to Preemption in the National Energy Conservation Policy Act did Not Alter the Focus on Preempting Appliance Conservation Standards

Shortly after the 1975 EPCA, Congress abandoned its target-based approach in favor of mandatory federal appliance conservation standards. This change was embodied in the National Energy Conservation Policy Act of 1978 (NECPA). Pub. L. No. 95-619, 92 Stat. 3206. NECPA required DOE to produce appliance conservation standards, rather than relying on nonbinding targets. *Id.* § 422, 92 Stat. at 3259. On the assumption that these standards would soon be in place, NECPA also flipped the default for preemption of state and local conservation standards: rather than waiting until federal standards were in place, any "energy efficiency standard or other requirement respecting energy use or energy efficiency" enacted after NECPA would now be preempted by default unless eligible for a preemption waiver. *Id.* § 424(a), 92 Stat. at 3264.

While NECPA expanded EPCA preemption to include conservation standards for appliances that did not yet have federal standards, it did not alter the *type* of regulations affected. The text of NECPA's preemption provision is substantively identical to the 1975 EPCA's, with only "similar requirement with respect to" changed to "other requirement respecting." *Compare* 1975 EPCA § 327(a)(2), 89 Stat. at 927, *with* NECPA § 424(a), 92 Stat. at 3264. Supporting this reading, congressional reports continued to stress the parallel between the federal standards that EPCA enables and the state and local standards that the law displaces. *E.g.*, H.R. Rep. No. 95-543, at 17 (1977) (The 1975 EPCA "provide[d] for preemption of state standards upon the promulgation of a federal standard," and NECPA would "modif[y] this provision by preempting state standards which are prescribed after the date of enactment.").

The DOE reached the same conclusion about the preemptive scope of NECPA. In 1982, the DOE determined that it would issue no standard for certain types of appliances, leaving some state and local standards preempted without federal replacements. 47 Fed. Reg. 14,424. The DOE

found this outcome worrying enough to alter its approach to state petitions for preemption waivers. *Id.* at 14,455-56. In doing so, the agency also analyzed NECPA's preemption provision to determine precisely which state regulations would require waivers. DOE found that:

> [NECPA] section 327(a)(2) clearly provides that only those regulations which provide for "*any energy standard or other requirement with respect to energy efficiency or energy use* of a covered product" will be superseded. (Emphasis added). Thus, a rule that established the energy efficiency of a particular appliance would be superseded by the Federal rule.... A rule whose purpose is other than energy efficiency such as a law on fire safety, would not appear to be preempted by the Federal rule, even if it has a secondary and incidental effect of improving the efficiency of a covered product.

*Id.* at 14,456. In other words, a regulation like the Decarbonization Law, "whose purpose is other than energy efficiency," would not be preempted under NECPA.

   3. The Current Language, Established by the National Appliance Energy Conservation Act, Likewise Preempts Only Appliance Conservation Standards

DOE's decision not to establish standards for many appliances was the impetus for the National Appliance Energy Conservation Act of 1987 (NAECA) and the core language at issue in this case.[2] Pub. L. No. 100-12, 101 Stat. 103. The statute is highly detailed, enacting some federal conservation standards by statute, requiring DOE to promulgate others, and leaving still others to state and local governments. *See generally id.* §§ 5, 7, 101 Stat. at 107-22. Behind this complexity, however, is a simple goal: "The establishment of Federal standards and the preemption of State standards." S. Rep. No. 100-6, at 2 (1987). And the scope of that preemption was intended to "continue the basic concept" from NECPA.

As with NECPA and the 1975 EPCA before it, NAECA's preemption provisions target appliance conservation standards, not other types of regulations. Congress enacted NAECA

---

[2] Plaintiffs also allege that EPCA's industrial-appliance provisions, preempt the Decarbonization Law. Compl. ¶ 49. Those provisions were added by the Energy Policy Act of 1992. Pub. L. No. 102-486, § 122(e)(2), 106 Stat. 2776, 2816. Congress intended them to merely "expand the coverage" of EPCA's appliance standards; there is no indication that they changed EPCA's preemptive scope. H.R. Rep. No. 102-1018, at 384 (1992) (Conf. Rep.).

preemption to protect manufacturers from "a patchwork of unpredictable and inconsistent requirements" created by state or local regulations "fill[ing] the void" left by delayed federal standards. H.R. Rep. No. 100-11, at 31 (1987); *see also* S. Rep. No. 100-6, at 4 (identifying the concern as a "trend" of "separate State appliance standards"). Appliance prohibitions, such as those that the Decarbonization Law may lead to, do not compete with federal appliance standards and do not create a high level of inconsistency. At most, they create a binary between states that allow a given appliance type and those that do not; this is not the sort of "increasing[] complicat[ion]" with which NAECA is concerned. S. Rep. No. 100-6, at 4.

Indeed, the legislative record consistently refers to NAECA preemption as applying to appliance conservation standards, in parallel with federal appliance conservation standards, not other types of regulations. *See, e.g., id.* at 2 ("In general, [NAECA's] national standards would preempt all State standards."); H.R. Rep. No. 100-11, at 24 (describing NAECA as "continu[ing] the basic concept of preempting State energy efficiency standards"); S. Rep. No. 100-345, at 2 (1988) (legislative record from subsequent amendment in same Congress describing NAECA as "preempt[ing] States from enacting energy efficiency standards" and "replacing an ever-changing patchwork of State standards with a single Federal standard"). Conversely, the record shows no concern with preempting state and local regulations other than appliance conservation standards.

In the face of this history, it would be absurd to read NAECA as silently removing a broad swathe of state and local power to enact environmental, health, and safety regulations. NAECA is the product of a "comprehensive agreement" between manufacturers and energy-efficiency advocates, "which is the foundation" of the law. H.R. Rep. No. 100-11, at 28. As such, it specifies both federal conservation standards and the state standards that are protected from preemption at a high level of detail. *E.g.*, NAECA § 5, 101 Stat. at 109 (42 U.S.C. § 6295(c)(1)) (specifying conservation standards for 12 different types of room air conditioners); *id.* § 7, 101 Stat. at 118

(codified as amended at 42 U.S.C. § 6297(b)(4)) (exempting "regulation[s] prohibiting the use in pool heaters of a constant burning pilot" from preemption). And Congress specifically considered the level of energy conservation and the burden on manufacturers created by these detailed provisions. *E.g.*, H.R. Rep. No. 100-11, at 29-30 (listing energy savings and percentage of products requiring redesign under new standards). Given this detailed and precise approach, it is unreasonable to interpret NAECA as *sub silentio* eliminating a large portion of unrelated state and local authority. *Cf. U.S. v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 412 (1999) ("[W]here precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions…, a statute…that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter.").

### B. The Legislative History Explains the Limited Scope of the Broadening Language in EPCA's Preemption Provision

The legislative history also explains the purpose of the broadening language in EPCA's preemption provision: the inclusion of standards "with respect to," "respecting," and finally "concerning the energy efficiency or energy use of" an EPCA-covered product. 1975 EPCA § 327(a)(2), 89 Stat. at 927; NECPA § 424(a), 92 Stat. at 3264; NAECA § 7, 101 Stat. at 118. This language preempts design standards that aim to improve energy efficiency but do not explicitly name an energy-efficiency metric. It is not intended to extend to regulations that prohibit the use of an appliance altogether. *Contra* Compl. ¶ 54.

A conference summary report for NECPA explains that this broadening language is meant to include "design regulations relating to the energy efficiency of [a covered] product." 124 Cong. Rec. 34,563 (1978). These "design regulations" are rules aimed at improving energy efficiency of an appliance, but which do not specify a level of energy efficiency, and are therefore not "performance standards." *Id.* The conference used prohibitions on gas pilot lights as an example:

7

such regulations are intended to reduce the energy use of gas appliances, but they do not set any performance metrics that the appliances must achieve, so they may not initially be understood as energy-efficiency standards. Congress wanted to ensure that such "design regulations"—which were still regulations intended to improve the efficiency of specific appliances—would be covered. *Id.*

Thus, the term "concerning" in reference to the types of regulations that EPCA preempts has a specific, limited purpose: to preempt appliance-efficiency regulations, like pilot-light prohibitions, that set a "design" standard rather than a numeric "performance" standard. It is not intended to expand EPCA preemption beyond the appliance conservation standards that Congress has specified throughout EPCA's history. It certainly is not meant to *sub silentio* eliminate state and local authority to pass basic environmental, health, and safety regulations, as Plaintiffs' allegations imply. Compl. ¶ 54 (the Decarbonization Law "concerns" energy use, and is therefore preempted, "because it prohibits the installation of EPCA-covered products").

## II. The Montgomery County Building Code Is Exempt from EPCA Preemption

There is a separate reason for dismissing the Complaint: the County Code is exempt from EPCA preemption. In passing NAECA, and again in expanding EPCA to cover industrial appliances, Congress created exemptions from preemption for regulations contained in building codes that meet certain requirements (Code Exemptions). NAECA § 7, 101 Stat. at 121 (42 U.S.C. § 6297(f)(3)); Energy Policy Act of 1992, Pub. L. No. 102-486, § 122(e), 106 Stat. 2776, 2816 (42 U.S.C. § 6316(b)(2)(B)). There is no dispute that the County Code meets these requirements prior to any amendments from the Decarbonization Law. Plaintiffs allege that the Decarbonization Law itself violates these requirements, but, as explained below, they are incorrect.

### A. *Prohibiting the Use of Some EPCA-Covered Appliances Does Not Make a Code Ineligible for the Code Exemptions*

The Code Exemptions' requirements boil down to a simple premise: a building code is not

preempted so long as it does "not require the installation of [EPCA-]covered products which have efficiencies exceeding the applicable Federal standard." S. Rep. No. 100-6, at 2. This principle is embodied in seven specific requirements for codes that may regulate consumer appliances, 42 U.S.C. § 6297(f)(3)(A)-(G), and two for codes with standards for industrial appliances, *id.* § 6316(b)(2)(B)(i)-(ii). These "limited requirements" are intended to ensure that state and local building codes do not replace federal appliance conservation standards. S. Rep. No. 100-6, at 11.

It is therefore clear that the Code Exemptions do not require a building code to permit the use of all EPCA-covered appliances. This makes sense: Building codes frequently prohibit the installation or use of appliances for health and safety reasons,[3] and, as discussed in Section I above, Congress did not intend EPCA to preempt such regulations, only appliance conservation standards. In fact, a committee report for NAECA specifically uses building-code "fire, heating or safety standards" as examples of state and local regulations that the act would *not* preempt. H.R. Rep. No. 100-11, at 24. Thus, the Code Exemptions protections align with EPCA's overall approach to preemption, under which only state and local energy conservation standards, not other environmental, health, or safety regulations, are preempted.

B. *Plaintiffs' Allegations Misunderstand the Code Exemptions' Requirements*

Plaintiffs do not dispute that the County Code, prior to any amendments from the Decarbonization Law, is protected by the Code Exemptions. Instead, Plaintiffs allege that the Decarbonization Law itself—which they assert will prohibit the installation or use of certain EPCA-covered appliances—violates the requirements of the Code Exemptions. Compl. ¶¶ 58-64. This is

---

[3] *E.g.*, Int'l Code Council (ICC), *2021 International Fire Code* § 605.5.2.1.1, *available at* https://codes.iccsafe.org/content/IFC2021P1 (prohibiting outdoor heaters in occupied buildings); ICC, *2021 International Fuel Gas Code* § 303.3, *available at* https://codes.iccsafe.org/content/IFGC2021P1 (prohibiting fuel-fired appliances in various areas); ICC, *2021 International Residential Code* § G2445.3, *available at* https://codes.iccsafe.org/content/IRC2021P1 (prohibiting larger unvented room heaters in certain buildings).

9

incorrect. The Code Exemptions' requirements exist to ensure that building codes do not "effectively requir[e] the installation of [an EPCA-covered] product with an efficiency exceeding the applicable Federal standards." S. Rep. No. 100-6, at 11. A prohibition on using an appliance does not violate these requirements: a code that prevents an EPCA-covered appliance from being installed at all does not "effectively requir[e] the installation of" a version of that product exceeding EPCA's efficiency requirements. This general principle—that a prohibition is not an efficiency regulation—also applies to each specific argument that Plaintiffs make, as explained in detail below.

1. An Appliance Prohibition Does Not Violate the Industrial Code Exemption's Requirements

The Code Exemption covering industrial appliances (Industrial Code Exemption) has two requirements, which work closely together. First, the regulation must "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in" the American Society of Heating, Refrigerating, and Air Conditioning Engineers' Standard 90.1 (ASHRAE 90.1), a commonly used standard for commercial buildings. *Id.* § 6316(b)(2)(B)(i). Second, it must "not take effect prior to the effective date of the applicable minimum energy efficiency requirement in amended [ASHRAE 90.1]." *Id.* § 6316(b)(2)(B)(ii). Taken together, these two requirements prohibit codes from requiring an EPCA-covered industrial appliance to have an energy efficiency greater than that required by the current version of ASHRAE 90.1.

An appliance prohibition does not violate these requirements. Plainly, nothing in the Decarbonization Law, or any appliance prohibition that might come of it, "require[s] that the energy efficiency of [any] product exceed" any particular standard. Nor does an appliance prohibition "effectively requir[e]" builders to use a higher-efficiency version of an EPCA-covered appliance, as was Congress's concern. S. Rep. No. 100-6, at 11. If an appliance is affected by the prohibition, it cannot be used regardless of its efficiency; if not, its efficiency is also unaffected.

10

Thus, it is incorrect to claim that an appliance prohibition violates this requirement because it may apply to appliances "even when they meet the efficiency standards" in ASHRAE 90.1 *Contra* Compl. ¶ 64. The Industrial Code Exemption does not affirmatively require a code to allow every EPCA-covered appliance that meets ASHRAE 90.1. It only prevents codes from putting specific kinds of restrictions on EPCA-covered appliances—namely, from "requir[ing] that the energy efficiency of such product exceed" ASHRAE 90.1. 42 U.S.C. § 6316(b)(2)(B)(i).

    2. An Appliance Prohibition does Not Violate the Consumer Code Exemption's Requirements

For similar reasons, the Code Exemption that applies to consumer appliances (Consumer Code Exemption) also permits appliance prohibitions. The Consumer Code Exemption has seven requirements, but the Complaint addresses only four of them. Compl. ¶¶ 58-61. The Center responds to each of Plaintiffs' allegations in turn, then briefly addresses the remaining three.

**Requirement A:** First, the Consumer Code Exemption requires the code to "permit[] a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." 42 U.S.C. § 6297(f)(3)(A). Plaintiffs allege that an appliance prohibition would violate this requirement by preventing builders from "selecting" the prohibited appliance. Compl. ¶ 58. But prohibiting a single appliance does not mean that builders can no longer "select[] items" as a whole. Reading this provision as requiring codes to allow *any* "item"—that is, any measure taken to improve the building's efficiency—would be absurd, because it would mean that state and local governments would have to allow any efficiency measure at all in any building, no matter how inappropriate or unsafe.

**Requirement B:** Second, a code must "not require that [an EPCA-]covered product have an energy efficiency exceeding the applicable [federal] energy conservation standard." 42 U.S.C. § 6297(f)(3)(B). Plaintiffs make essentially the same assertion here as for the Industrial Code

11

Exemption: that "prohibit[ing] the use of...appliances that meet federal energy efficiency standards" is equivalent to requiring those appliances to have higher energy efficiency standards. Compl. ¶ 59. As discussed above, this is a non sequitur; a prohibition is not an efficiency regulation. In any case, Plaintiffs' reasoning applies equally well in the opposite direction—a prohibition on an appliance is just as much a prohibition on *higher*-efficiency appliances, and, by this logic, just as much of a requirement to use *lower*-efficiency appliances. Thus, it is clear that Requirement B does not bar appliance prohibitions.

  **Requirement C:** The third requirement is that "[t]he credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding [federal standards]...is on a one-for-one...basis." 42 U.S.C. § 6297(f)(3)(C). Plaintiffs appear to argue that prohibiting an EPCA-covered appliance violates this "because it does not give credit" for such appliances. Compl. ¶ 60. But, like Requirement A, Requirement C does not demand that codes give credit in all cases—only that, where they do give credit, they give it "on a one-for-one...basis." Prohibiting the use of an EPCA-covered appliance does not change the credit calculation for using a higher-efficiency version of that appliance; the builder would still receive the same amount of credit when exceeding federal requirements.

  **Requirement E:** The final requirement for which Plaintiffs allege a violation is Requirement E. This requirement applies "[i]f the code sets forth one or more optional combinations of items" for compliance, and some of those combinations "include[] a covered product the efficiency of which exceeds" federal standards. In that case, the code must do two things: First, it must offer an equal number of combinations that include a version of that covered product with an efficiency level within 5% of federal standards. Second, "at least one combination shall include such covered product the efficiency of which meets but does not exceed" federal standards. 42 U.S.C. § 6297(f)(3)(E). While detailed, this provision serves the same basic purpose

12

as the other Requirements: wherever a code allows builders to comply with energy-conservation requirements by installing an appliance that is more efficient than federal standards require, the code must also offer options that use a version of that appliance that equals federal standards.

Plaintiffs focus on the requirement "that at least one combination shall include such covered product" exactly meeting the federal standards. Compl. ¶ 61 (quoting 42 U.S.C. § 6297(f)(3)(E)). They allege that an appliance prohibition violates this element of the requirement because it "does not allow for any combination" that includes the prohibited appliance. *Id.* For this logic to work, Requirement E would need to read: "at least one combination shall include *each* covered product." But it does not; instead, the requirement uses the term "*such* covered product." The term "such" here refers back to the appliance that triggered the requirement in the first place: "for every combination *which includes a covered product* [with an efficiency higher than federal standards]...there also shall be at least one combination which includes *such covered product* [within 5% of federal standards]...except that at least one combination shall include *such covered product* [equal to federal standards]." 42 U.S.C. § 6297(f)(3)(E) (emphasis added); *see also, e.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023) ("The word 'such' usually refers to something that has already been described or that is implied or intelligible from the context or circumstances." (internal quotes and citation omitted)).[4]

**Requirements D, F, and G:** The Complaint does not address the remaining requirements. They refer to metrics for code compliance, not to mandates in the code itself, and therefore an appliance prohibition cannot violate them. Specifically, Requirement D provides that, if a code uses EPCA-covered appliances as a model for calculating "baseline building designs against which

---

[4] Alternatively, "such covered product" could be read as "a covered product," meaning that a code would comply with Requirement E so long as it allows at least one EPCA-covered appliance to be used in a "combination." Plaintiffs do not assert that the County is prohibiting *all* EPCA-covered appliances, therefore even under this reading Plaintiffs do not sufficiently allege that the Decarbonization Law would lead to a violation of Requirement E.

13

all submitted building designs are to be evaluated," those appliances must "meet[] but…not exceed" federal standards. 42 U.S.C. § 6297(f)(3)(D). Requirement F mandates that the conservation objectives used for Requirement A be "specified in terms of an estimated total consumption of energy…utilizing an equivalent amount of energy." *Id.* § 6297(f)(3)(F). Requirement G requires that energy codes use the same test procedures as federal standards use, with some leeway for local conditions. *Id.* § 6297(f)(3)(G). An appliance prohibition would not affect a baseline building design, only the buildings themselves; it also would not affect the metrics with which a code's conservation objectives are stated or the code's testing procedures. Thus, an appliance prohibition does not violate any of these requirements.

C. California Restaurant Association v. City of Berkeley *Does Not Apply to the Code Exemptions*

*California Restaurant Association v. City of Berkeley*, cited elsewhere in Plaintiffs' complaint, does not change this analysis. *See* Compl. ¶ 4 (citing 89 F.4th 1094 (9th Cir. 2024)). The *Berkeley* panel found that, in certain circumstances, a prohibition on the use of an EPCA-covered appliance could be preempted because it "concern[s]" that appliance's "energy use." 89 F.4th at 1101-02. But this only defines the outer bounds of EPCA preemption; there are numerous exceptions that allow regulations "concerning…energy use" to continue in force—including the Code Exemptions. *See generally* 42 U.S.C. §§ 6297(b)-(f), 6316(a)-(b), (d)-(h). These were not considered in *Berkeley* because the defendant in that case did not raise the Code Exemptions as a defense. *See* 89 F.4th at 1101 n.1.

Neither does the reasoning in the *Berkeley* opinion apply to the Code Exemptions. The *Berkeley* panel's logic rests on the term "energy use," used in some of EPCA's preemption language. *See generally id.* at 1101-04. The Code Exemptions do not use the term "energy use" to describe their core requirements; instead, they use "energy efficiency." *See generally* 42 U.S.C.

14

§§ 6297(f)(3), 6316(b)(2)(B). The only two exceptions refer to the metrics that codes may use, not the subject matter that they may regulate. *See id.* § 6297(f)(3)(C), (G) (codes may use "energy use" to determine credit awarded to certain efficiency measures, and codes must use certain test procedures for measuring "energy use"). Under the logic of the *Berkeley* decision, "energy use" and "energy efficiency" have separate meanings. 89 F.4th at 1105. Thus, that opinion's interpretation of "energy use" does not affect the interpretation of "energy efficiency" for the purposes of this case.

It is therefore clear that the County Code, and the regulations contained in it, are protected from EPCA preemption by the Code Exemptions. This will be true even if the County adds appliance prohibitions to the County Code pursuant to the Decarbonization Law. An appliance prohibition is the only scenario that Plaintiffs have offered to explain how the law would lead to EPCA preemption. Therefore, Plaintiffs have failed to state a claim on which relief can be granted.

## Conclusion

For the foregoing reasons, the Center urges the Court to grant the County's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 18, and dismiss this case.

Dated: January 15, 2025               Respectfully submitted,

                                      _____/s/_____

Daniel Carpenter-Gold*                Jon A. Mueller
Jamie Long                            Visiting Associate Professor
Public Health Law Center              Director, Environmental Law Clinic
Mitchell Hamline School of Law        University of Maryland, Carey School of Law
875 Summit Ave.                       500 W. Baltimore St.
St. Paul, MN 55105                    Baltimore, MD 21201
Daniel.CarpenterGold@mitchellhamline.edu   JMueller@law.umaryland.edu
651-290-6329                          410-706-0590

*pro hac vice* motion forthcoming     *Counsel for the Public Health Law Center*

15