IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION OF **\*** <br> HOME BUILDERS OF THE UNITED **\*** <br> STATES, et al., **\*** <br> **\*** <br> Plaintiffs, **\*** <br> **\*** <br> v. **\*** <br> **\*** <br> MONTGOMERY COUNTY, **\*** <br> MARYLAND, **\*** <br> **\*** <br> Defendant. **\*** | Case No. 8:24-CV-03024-PX |

**DEFENDANT MONTGOMERY COUNTY, MARYLAND'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant, Montgomery County, Maryland ("the County"), and files this Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Summary Judgment and in Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion for Summary Judgment, and states the following in support thereof:

**I.      Plaintiffs Concede Dismissal of Their Demand for Attorney's Fees is Appropriate.**

Plaintiffs acknowledge they have no legal basis to recover attorney's fees in this case. *See* ECF No. 51-1 at 42 n. 7. This Court should therefore dismiss with prejudice Plaintiffs' demand for attorney's fees from this case.

**II.     The Lack of Any Enforceable Law Demonstrates That This Case is not Ripe.**

Plaintiffs ask this Court to enjoin a law that is not presently enforced[1] based upon predictions of the future impact of unwritten regulations. The absence of any concrete facts to establish injury in fact, let alone irreparable harm to warrant the injunctive relief they seek, means this matter is not ripe for this Court's decision.

Plaintiffs cite *Retail Industry Leaders Association v. Fielder*, 475 F.3d 180 (4th Cir. 2007) as a case where the court found ripe for determination the legality of a Maryland law prior to the promulgation of required regulations. ECF No. 51-1 at 11, 13. Key to that determination however was the fact that to comply with the law's spending and reporting requirements, a party had to alter its accounting procedures and spending prior to the law's effective date. *See id.* at 188. Further, the regulations would not alter those spending and reporting requirements. *See id.* at 188. This was sufficient for the Fourth Circuit to find imminent injury: the law itself created actual and present liability without any regulations. *See* 475 F.3d at 186-87.

Unlike *Retail Industry*, in this case, there is no similar requirement for any Plaintiff to take any action or alter any business practices before the Decarbonization Law's effective date. Plaintiffs' claims regarding present harm are based upon their predictions of future events and decisions by non-parties that may or may not happen – higher gas rates, loss of customers, or loss of trade union members – based upon an unwritten law. "An issue is not fit for review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *See id.* at 188

---

[1] All affiants admit there is no enforceable law. *See.* ECF No. 32-2 ¶ 4; ECF No. 32-3 ¶ 4; ECF No. 32-4 ¶ 4; ECF No. 32-5 ¶ 6; ECF No. 32-6 ¶ 4; ECF No. 32-7 ¶ 4; ECF No. 32-8 ¶ 5; ECF No. 32-9 ¶ 5; ECF No. 32-10 ¶ 5 (stating Bill 13-22 "sets into motion the process" for enforceable regulations). Every affiant inaccurately calls the Decarbonization Law a ban or prohibition, despite its 12 exceptions and the requirement that the yet-to-be promulgated regulations will articulate the parameters of two more. *See* Def.'s Mot., ECF No. 42, at 6-8, 15.

(quotation omitted).

Further, the regulations in this case will flush out the scope of two exceptions to the Decarbonization Law. *See* Def's Mot., ECF No. at 42 at 6-8, 15. The full scope of the legal issue – the Decarbonization Law[2] – will change. Plaintiffs cannot claim present cognizable, injury in fact – or irreparable harm – without knowing the full scope of the law.

To that end, all allegations in the Amended Complaint lack present tense statements or facts reflecting the current financial impact or actual cost suffered due to the law now. All the affidavits commence with future tense speculations of what the law "will" or "would" or "is likely" to do, and then switch to present tense to claim present harm based upon their predictions. The future tense statements are based upon guesses about how unidentified non-parties will act based upon an unenforced law. Plaintiffs claim unidentified potential customers and developers will abandon natural gas, and that unidentified persons will decide to abandon gas-related trades. Such speculation is not fact. There are no attestations of actual lower sales, notices from gas utilities of any intention to charge higher rates to customers, numbers of lost customers, the numbers of new developments with no natural gas since the law took effect, or the actual decrease in union membership since the Decarbonization Law was enacted.

Until the County issues the regulations and has a law to enforce, this case is not ripe for consideration by this Court and should be dismissed.

---

[2] The "Decarbonization Law" refers to Montgomery County Bill 13-22, as codified in Section 8-14D of the Montgomery County Code. A copy of Bill 13-22 is attached to the County's Motion to Dismiss or in the Alternative for Summary Judgment, ECF No. 42, as Exhibit 5; a copy of Section 8-14D is attached as Exhibit 6.

**III.    The Absence of a Presently Enforced Law Deprives Plaintiffs of Standing.**

For the reasons noted in the County's ripeness argument above and in its Motion, Plaintiffs have no concrete or particularized injury in fact that is actual or imminent, and a favorable decision will not redress harm that was not suffered by a law that is not being enforced.

Plaintiffs predict that regardless of what the implementing regulations say, the Decarbonization Law will result in fewer buildings with gas service. ECF No. 51-1 at 20. But that does not mean there will be ***no*** buildings with natural gas, and Plaintiffs cannot know now exactly how many fewer buildings will lack natural gas. Absent a clear picture as to how much new buildings with gas will decrease based upon the regulations, there is no predictable chain of events to ground any injury. Instead, Plaintiffs' predictions of future decisions by non-parties about an unenforced law are the only basis for the alleged present harm. This is not sufficiently concrete and imminent harm to establish standing.

**IV.    The Energy Policy and Conservation Act Does Not Preempt the Decarbonization Law.**

Even if this Court finds Plaintiffs' claim is ripe and they have standing, Plaintiffs fail to overcome the basic assumption that Congress did not intend to preempt the County's building code, enacted for public health and safety purposes. *See Just Puppies Inc. v. Brown*, 123 F.4th 652, 661 (4th Cir. 2024) (when Congress legislates in a field traditionally occupied by states, the basic assumption is that Congress did not intend to displace state law).

    **A.    Plaintiffs' Express Preemption Analysis Fails Based Upon the Plain Text of the Energy Policy and Conservation Act.**

The plain text of the Energy Policy and Conservation Act (EPCA)[3] demonstrates that it does not preempt the Decarbonization Law.

---

[3] 42 U.S.C. §§ 6201-6422.

### 1. To Find for Plaintiffs, the Court Must Omit Half of the ECPA's Definition of "Energy Use."

The EPCA[4] preemption clause at issue here preempts any state or local regulation "concerning the energy efficiency [or] energy use" of a covered product under the EPCA. *See* 42 U.S.C. § 6297(c).

As an initial matter, Plaintiffs' plain text preemption analysis focuses solely on the definition of "energy use," abandoning any attempt to argue that the Decarbonization Law concerns "energy efficiency." *See* Pls.' Opp'n, ECF No. 51-1 at 22-29. This is a tacit acknowledgment that the Decarbonization Law does not concern, "the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures" articulated in the EPCA. 42 U.S.C. § 6291(5) (defining "energy efficiency").[5]

Plaintiffs therefore argue only that the Decarbonization Law concerns energy use. Plaintiffs build their preemption analysis of the term "energy use" on a deeply flawed foundation: they omit half of the ECPA's definition of "energy use." ECF No. 51-1 at 23, 29. Plaintiffs state "energy use" means "the quantity of energy directly consumed by a consumer product at point of use" for consumer products. ECF No. 51-1 at 23. But the full definition states: "The term 'energy use' means the quantity of energy directly consumed by a consumer product at point of use **determined in accordance with test procedures under section 6293 of this title**." 42 U.S.C. § 6291(4) (emphasis

---

[4] As noted in Defendant's Motion, the EPCA's preemption clauses for consumer and industrial products are similar. Def's. Mot., ECF No. 42 at 23 n.27. The County's arguments apply to both.

[5] Despite the lack of any argument or analysis that the Decarbonization Law concerns "energy efficiency," Plaintiffs resuscitate and include the term "energy efficiency" in their subsequent discussion of the EPCA's legislative history and purpose. *See* Pls.' Opp'n, ECF No. 51-1 at 32.

added). This omission is fatal to Plaintiffs' subsequent analysis as it contravenes the requirement that courts give full effect to "every provision and every word in a statute." *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005).

Giving full effect to the complete definition, "energy use" focuses on the quantity of energy used by a consumer product as determined under EPCA test procedures, which must occur before the consumer product is placed into the stream of commerce. As the Decarbonization Law does not "concern" the quantity of energy consumed by an appliance under EPCA test procedures, the EPCA's preemption provision does not apply.

### 2.     Plaintiffs Advance an Incorrect Definition for "Point of Use."

Plaintiffs also argue a dictionary definition[6] for the term "point of use," which appears within the definition of "energy use" but is not defined by the EPCA. ECF No. 51-1 at 32. But "point of use" has meaning within the context of the statute. To measure energy at the "point of use" means gauging energy as consumed by the appliance from the pipe or outlet, or "site energy," and does not include "source energy" from the power plant that produced the energy or the energy required to deliver the energy to appliance. *See Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1123 (9th Cir. 2024) (Friedland, J., dissenting); *Id.* at 1124 n.11 & n. 13 (citing two examples Department of Energy use of term "point of use" that excludes source energy); *Assoc. of Contracting Plumbers of the City of New York, Inc. v. City of New York*, No. 23-CV-11292 (RA), 2025 WL 843619 *5 (S.D.N.Y. March 18, 2025) (discussing technical meaning of "point of use" in the EPCA). *See also* 47 Fed. Reg. 14427 (referring to "point of use" as "site energy" rather than "source energy"). Thus,

---

[6]  By using a current dictionary definition for "point of use," Plaintiffs incorporate yet another flaw in their statutory analysis. Courts look to dictionary definitions in effect at the time of codification to construe undefined statutory terms. *See, e.g., Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

the instruction to measure "energy use" at the "point of use" is an instruction to manufacturers that the measurement does not include "indirect energy consumption upstream of the supply chain." *See Berkeley*, 89 F.4th at 1123 (Friedland, J., dissenting). This was necessary because, "[o]ther regulators at the time *did* consider such indirect energy consumption ('source energy') when adopting energy standards." *See id.* (citation omitted). Thus, contrary to Plaintiffs' argument, "point of use" does not mean that appliances' "energy use" should be measured in customers' houses where the appliances are used.[7]

Plaintiffs similarly seek to expand the scope of the preemption provision by touting the use of the term "concerning" in the EPCA's preemption of a local regulation. *See* 42 U.S.C. 6297(c) (preemption local regulations "concerning the . . . energy use" of a covered product); Pls.' Mot., ECF No. 51-1, at 23-24. This Court need not engage in this analysis at all if it agrees with the County that the Decarbonization Law does not implicate "energy use" as defined by the EPCA. *See* Def's Mot., ECF No. 42 at 23-29. Even if the Court were to consider this term, Plaintiffs acknowledge that "concerning" or "concerns" in a statute is akin to the phrase "relating to," which the Supreme Court

---

[7] Plaintiffs' statutory analysis mirrors that of the majority in *Berkeley*, a decision which several plaintiffs here have used to challenge natural gas restrictions in new construction in multiple locations across the county. *See*, *e.g.*, *Nat'l Ass'n of Home Builders of the United States, et al., v. District of Columbia*, Civil No. 1:24-CV-02942-ACR (D. D.C.) (sharing six plaintiffs with this case); *Mulhern Gas Co., Inc. et al. v. Moseley, et al.*, Case No. 1:23-CV-02167-GTS-PJF (N.D.N.Y) (sharing two plaintiffs with this case).

Further, on March 27, 2025, four Plaintiffs in this case (Maryland Building Industry Association, Inc., National Association of Home Builders of the United States, Restaurant Law Center, and Washington Gas Light Company) joined two other plaintiffs to initiate another lawsuit against the County, advancing the *Berkeley* court's analysis to argue that the EPCA preempts the County's Building Energy Performance Standards law. *See Elizabeth Condominium Ass'n, Inc., et al., v. Montgomery Cnty., Md.*, Case No. 8:25-CV-01019-DLB (D. Md.). Two plaintiffs here (Maryland Building Industry Association, Inc. and Washington Gas Light Company) joined others to sue the State of Maryland on January 13, 2025, claiming based upon the Berkeley EPCA analysis that the State's Building Energy Performance Standards law. *See Maryland Building Industry Ass'n, Inc., et al. v. McIlwain,* Case No. 8:25-CV-00113-DLB (D. Md.).

7

instructs does not mean "the sky is the limit" for the breadth of a statute's preemptive scope. *Dan's City Used Cars, Inc. Pelkey*, 569 U.S. 251, 260 (2013). And as noted by the County, the text of the Decarbonization Law makes no reference to and does not concern "energy use" or EPCA appliance energy efficiency standards, and the legislative history shows the aim of the Decarbonization Law is not "energy use" under the EPCA but to combat climate change, global warming, and the public health concerns arising from use of natural gas appliances in residential settings. *See* Def's Mot., ECF No. 42 at 5, 23-29.

### 3. References to Energy Use in Provisions That Tell the Secretary When to Bring Products Under the EPCA Umbrella Are Not the Same as References to "the Energy Use" of an EPCA-Covered Product in the Preemption Provision.

Plaintiffs argue the EPCA's definition of "energy use" should be read in a broader sense based upon the apparently colloquial use of that term elsewhere in the EPCA. ECF No. 51-1 at 29. They cite to 42 U.S.C. § 6292(b)(1), which states the Secretary of the Department of Energy may classify a product as a covered product (and therefore subject to the EPCA) if the "average annual per-household **energy use** by products of such type is likely to exceed 100 kilowatt-hours (or its Btu equivalent) per year." 42 U.S.C. § 6292(b)(1)(B) (emphasis added). Plaintiffs argue the colloquial use of "energy use" in this provision broadens the scope of the term "energy use" in EPCA's preemption provision.

Contrary to Plaintiffs' argument that this shows a broader use, EPCA Section 6292(b)(2), states that for purposes of that subsection (b), the phrase "average annual per-household energy use with respect to a type of product" has a specific meaning, and provides a specific definition:

> For purposes of this subsection[,] [t]he term "**average annual per-household energy use with respect to a type of product**" means the estimated aggregate annual energy use (in kilowatt-hours or the Btu equivalent) of consumer products of such type which are used by households in the United States, divided by the number of such households

which use products of such type

42 U.S.C. § 6292(b)(2)(A) (emphasis added). Thus, the EPCA by its own terms specifies that energy use in Section 6292(b)(2) is distinct from the definition of "energy use" as it appears in the preemption provision, Section 6297(c). This Court must give effect to the terms as separately defined. *See Dep't of Agric. v. Kirtz*, 601 U.S. 42, 59 (2024) (when Congress bothers to provide separate definitions for terms, courts must give them effect); *Dean v. United States*, 556 U.S. 568, 573 (2009) ("[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (cleaned up)); *Metropolitan Washington Airports Auth. v. Pan*, 106 F.4th 355, 363 (2024) (stating the Court "must give effect to" separately defined terms in the same statute).

Plaintiffs also point to 42 U.S.C. § 6295(l)(1), which permits promulgation of standards by the Secretary if "the average per household **energy use** within the United States by products of such type (or class) exceeded 150 kilowatt-hours (or its Btu equivalent) for any 12-month period ending before such determination." 42 U.S.C. § 6295(1)(1)(A) (emphasis added); ECF No. 51-1 at 29. Although Section 6292(l) does not have the same definition specified in Section 6292(b)(2), its terms must be read in context. *See Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 128 (4th Cir. 2023). (in statutory interpretation, "[c]ontext often provides invaluable clues" to the meaning of words).

Reading both Section 6295(l)(1) and 6292(b)(2) in context reveal that both provisions apply **before** a product is brought within the scope of the EPCA as a "covered product." Both sections list conditions for the Secretary to determine if a particular product should be treated as a covered product under the EPCA. Then, **after** the Secretary determines the EPCA applies to the product, the

9

product must comply with the EPCA: it must meet the EPCA conservations standards (42 U.S.C. § 6295); and the product must be tested against those standards and be certified as meeting them. *See* 42 U.S.C. §§ 6293, 6314. The product must be labeled prior to sale accordingly. *See* 42 U.S.C §§ 6294, 6315. The provisions guiding the Secretary to determine if a product's energy consumption is so high it should be subject to the EPCA do not and could not use "energy use" in the same manner: the term "energy use" only applies once a product is a "covered product" and goes through the gauntlet of compliance. After that, per the preemption provisions, state and local regulations cannot interfere with the "energy use" or "energy efficiency" requirements for those covered products.

Finally, the term "energy use" in both Sections 6292(b) and 6295(l)(1) is not preceded by the definite article "the." Under canons of statutory construction, use of the definite article "the" particularizes and limits the subject it precedes, as opposed to the indefinite articles "a" or "an."[8] Congress clearly meant to incorporate the definition of "energy use" as Congress preempts regulations concerning "the" energy use of a covered product in the preemption provision, Section 6297(c). Neither Section 6292(b) nor 6295(l)(1) refer to "***the*** energy use" of a product, and neither invoke the definition for "energy use" in Section 6291(4).

The County's Decarbonization Law is not expressly preempted by the EPCA because it has no impact on appliances' energy use or energy efficiency.

### B. The EPCA's Legislative History Shows the Decarbonization Law Does Not Affect the EPCA's Purpose.

Plaintiffs acknowledge that the overarching purpose of the EPCA was to eliminate the patchwork of state appliance efficiency regulations and ensure uniformity for appliance

---

[8] *See Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 339 n.1 (4th Cir. 2008) (Niemeyer, J., dissenting) (observing "[i]t is a rule of law well established that the **definite article** 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an'" (quotation omitted, emphasis in original)).

manufacturers. Pls. Mem., ECF No. 51-1 at 31. The Decarbonization Law does not conflict with this purpose: it has no impact on those EPCA regulations and articulates no appliance efficiency standards or regulations. Tellingly, there is only one appliance manufacturer that is a party to this lawsuit, and its claimed injury is not that the Decarbonization Law will require it to alter its manufacturing processes to meet any efficiency standards in the Decarbonization Law. Rather, the only alleged injury by the appliance manufacturer is lost sales. ECF No. 32-4 ¶¶ 5-6. This is because, again, the Decarbonization Law has no appliance efficiency standards and has no impact at all on appliance manufacturers' efforts to comply with the EPCA in their designs and manufacturing.

      **C.**     **The EPCA's Waiver Provisions are not Implicated Because the Decarbonization Law Does not Concern Energy Use or Otherwise Regulate Appliance Efficiency.**

Plaintiffs' analysis regarding the waiver provisions available to localities that attempt to regulate "energy use" and "energy efficiency" through building codes do not apply here. The Decarbonization Law does not impact "energy use" or "energy efficiency" under the CPIA, and the regulations, once promulgated, will not either.[9] The waiver provisions are not implicated.

**V.**     **Plaintiffs Fail to Meet Their Burden for This Court to Enjoin the Decarbonization Law.**

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). To receive this extraordinary relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

---

[9] Plaintiffs' affidavits inaccurately state the County's law prohibits "the use of gas appliances." The term "appliance" appears nowhere in Bill 13-22. Although "cooking appliances" were listed as an exemption to the gas restrictions when the Bill was introduced (*see* Bill 13-22, Line 44, Ex. 5 to Defendant's Motion, ECF No. 42), the term was removed by amendment. *See id*.

disserved by a permanent injunction." *Monsanto Co.*, 561 U.S. at 156–57.

Plaintiffs cannot establish irreparable harm by a law that is not presently enforced. All affiants attest to present harm based solely on predictions as to what "will," "would," or "is likely" once the unseen and unwritten regulations take effect and are enforceable. Speculation about future impact, with no empirical data or facts to back up the predictions, does not give rise to present, factual, irreparable harm.

This absence of any facts or specifics to support the allegations of current injury is glaring. Two labor unions predict fewer "would-be gas workers," with no numbers cited to back up their claims; there are numbers quoted showing lower enrollment rates in gas training programs or a decrease in applications for positions in gas-related trades. ECF No. 32-9 ¶ 8; ECF No. 32-10 ¶ 7. Two builders claim present harm because they make decisions well in advance on new development – one claiming they decide 2 years out, the other 1 year out – without identifying a single development or planned potential development impacted by the Decarbonization Law. ECF No. 32-2 ¶ 7; 32-3 ¶ 8. Affiants predict higher gas rates due to a lower customer pool, but none claim a current, higher gas bill, and identify no communication from any gas provider of an intention to raise rates based upon the Decarbonization Law. Not a single affiant provides present, actual numbers of lost business, higher rates, fewer gas technician applications, or denied construction permits because of the Decarbonization Law.

Only one affiant, an employee of Washington Gas Light Company ("WGL"), identifies one customer who stated he will no longer use natural gas in developments because of Bill 13-22. *See* ECF No. 32-8 ¶ 7. One customer's hearsay statement of future intent based upon an unwritten and unenforced law – with no other information as to what percentage of WGL's business that customer represents – fails to meet the high bar of irreparable harm sufficient for this Court to act.

Given that Plaintiffs' only alleged harm is all speculative, Plaintiffs cannot demonstrate that the remedy at law of a monetary award will fail to compensate them: there is nothing to compensate when not a single Plaintiff articulates any concrete, present loss.

Finally, the balance of the equities and the public interest weigh against an injunction. In the context of injunctive relief against the government, the balance of the equities and the public interest merge. *See Ass'n of Cmty. Cancer Cntrs. v. Azar*, 509 F. Supp. 3d 482, 501 (D. Md. 2020) (citing *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) and *Nken v. Holder*, 556 U.S. 518, 435 (2009)). Here, Plaintiffs do not dispute that the County enacted the Decarbonization Law to protect public health and public safety. *See* Def's Mot., ECF No. 42 at 3-5. Enjoining the County's efforts to protect public health and safety is against the public interest.

Plaintiffs' main argument here – that there is no benefit in enforcing a preempted law – presumes they are correct on the merits of this case. As noted above, they are not. The ultimate touchstone of federal preemption analysis is Congressional intent. *See Just Puppies*, 123 F.4th at 661. Nothing in the EPCA's text or legislative history indicates an intention to protect the availability of natural gas as an energy source for appliances. Everything in EPCA's text and legislative history indicates a desire to prevent a patchwork of local appliance efficiency standards. The Decarbonization Law has no impact on EPCA efficiency standards, and is not preempted by the EPCA.

## IV.  CONCLUSION

Based on the foregoing, Defendant, Montgomery County, Maryland, requests that this Court grant its Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, dismiss the claims with prejudice or enter summary judgment in its favor, and grant such other relief as this Court deems proper.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

/s/
Erin J. Ashbarry
Chief, Division of Government Operations
Federal Bar No. 26298
erin.ashbarry@montgomerycountymd.gov

/s/
Kristen J. Nunley
Assistant County Attorney
Federal Bar No. 30964
kristen.nunley@montgomerycountymd.gov

/s/
Jacquelyn P. Allen
Assistant County Attorney
Federal Bar No. 13460
jacquelyn.allen@montgomerycountymd.gov

Attorneys for Defendant
101 Monroe Street, Third Floor
Rockville, Maryland 20850
240-777-6700
240-777-6705 (Fax)