**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NATIONAL ASSOCIATION OF
HOME BUILDERS OF THE
UNITED STATES *et al.*,                          *

     Plaintiffs,                                  *

     v.                                           *          Civil Action No. 8:24-cv-03024-PX

MONTGOMERY COUNTY,
MARYLAND,

     Defendant.                                   *

                                          ***

**MEMORANDUM OPINION**

Pending is Defendant Montgomery County, Maryland ("Montgomery County" or "the County")'s motion to dismiss the Amended Complaint, or in the alternative, motion for summary judgment to be granted in its favor. ECF No. 42. Plaintiffs, the National Association of Home Builders of the United States, the Restaurant Law Center, the National Federation of Independent Business, Inc., Maryland Building Industry Association, Washington Gas Light Company, Philadelphia-Baltimore-Washington Laborers' District Council, Teamsters Local 96, and Nation Propane Gas Association (collectively, "Plaintiffs"), cross-move for summary judgment in their favor. ECF No. 51.[1] The Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the

---

[1] Also pending are three motions for leave to appear as amicus curiae. ECF Nos. 44, 45 & 52. The Court retains discretion to grant such motions where the amicus curiae provide "helpful analysis of the law," has "special interest in the subject matter of the suit," or counsel of record needs assistance. *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 728 (D. Md. 1996); *Am. Humanist Ass'n v. Maryland-Nat'l Cap. Park & Plan. Comm'n*, 303 F.R.D. 266, 269 (D. Md. 2014). Sierra Club and Chesapeake Climate Action Network have a "special interest' in the case given the organizations' efforts in combatting the negative public health impacts of indoor pollution derived from gas appliances, as well as the potential impact this litigation may have on the organizations' future initiatives. ECF No. 44. Likewise, the American Gas Association also has a special interest in this action based on its representation of local natural gas distribution companies. ECF No. 52. And Public Health Law Center aids the Court's analysis of

following reasons, the Court GRANTS Montgomery County's motion for summary judgment and DENIES Plaintiffs' cross-motion.

## I.        Background

Plaintiffs seek declaratory relief and a permanent injunction related to the enforcement of Montgomery County Bill 13-22, Buildings–Comprehensive Building Decarbonization ("Bill 13-22" or "the Bill").  ECF No. 51.  Bill 13-22 essentially mandates that by December 31, 2026, the County Executive will issue new building codes and regulations that require "all-electric building standards for new construction [and] major renovation[s]."  ECF No. 42-8 (cleaned up).  Bill 13-22 defines an "all-electric building" as a "public or private building that contains no combustion equipment, or plumbing for combustion equipment, installed within the building or building site." *Id.* at 2.  "Combustion equipment" is further defined as any "equipment or appliance used for space heating, service water heating, cooking, clothes drying and/or lighting that uses fuel gas or fuel oil."  *Id.*  Although Bill 13-22 allows for the promulgation of exceptions to the "gas ban," such exceptions are narrowly drawn for buildings that, for example, require "emergency backup systems," are used by utilities regulated by the Maryland Public Service Commission, or to treat sewage or food waste.  *Id.* at 3.  But otherwise, Bill 13-22 bans gas-powered appliances in new construction.

Plaintiffs, an assortment of building and appliance trade associations and corporations, contend that that the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201–6422, expressly preempts Bill 13-22.  ECF No. 32 ¶¶ 68–74.  The EPCA is a proscriptive statute regulating the energy efficiency standards for consumer and industrial appliances.  When first

---

the legislative history and purpose of the EPCA.  ECF No. 45.  Accordingly, the motions (ECF Nos. 44, 45 & 52) are granted.

passed in 1975, the EPCA aimed to reduce "energy consumption through the operation of specific voluntary and mandatory energy conservation programs." *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, No. 23-CV-11292 (RA), 2025 WL 843619, at *3 (S.D.N.Y. Mar. 18, 2025) (quoting *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 498–99 (9th Cir. 2005)).  Eventually, Congress amended the EPCA through the National Energy Conservation and Policy Act, Pub. L. No. 95–619, 92 Stat. 3206 (1978), and again in the National Appliance Energy Conservation Act of 1987, Pub. L. No. 100–12, 101 Stat. 103 (1987), to establish uniform energy efficiency standards for appliances.  In its most recent form, the EPCA requires appliance manufacturers and distributors to test, certify and label appliances to reflect whether the appliances meet applicable federal energy conservation standards.  *See generally* 42 U.S.C. §§ 6293, 6314; 10 C.F.R. §§ 430–31; 10 C.F.R. § 429.12; 42 U.S.C. § 6291(6); 42 U.S.C. §§ 6294, 6315; 16 C.F.R. § 305.17.

The EPCA also includes two express preemption provisions.  The first concerns consumer covered appliances, and directs that "no State regulation concerning the energy efficiency*, energy use*, or water use of such covered product shall be effective with respect to such product," unless one of the exceptions applies.  42 U.S.C. § 6297(c) (emphasis added).  The second preemption provision pertains to industrial covered appliances, and makes clear that "[a] standard prescribed or established under section 6313(a) of this title shall, beginning on the effective date of such standard, supersede any State or local regulation concerning the energy efficiency or *energy use* of a product for which a standard is prescribed or established pursuant to such section."  42 U.S.C. § 6316(b)(2)(A) (emphasis added).

Plaintiffs essentially contend because Bill 13-22 regulates "energy use" by prohibiting any use of gas appliances in new construction, the Bill is preempted under 42 U.S.C. §§ 6297 and

6316(b)(2)(A).  ECF No. 32 ¶ 69.  Plaintiffs, in turn, ask this Court to declare Bill 13-22 a nullity and permanently enjoin the County from enforcing or attempting to enforce the Bill.  *Id.* ¶¶ 76, 77. The County responds that because Bill 13-22 prohibits appliances that use a certain type of energy—gas—but does not otherwise affect any energy-use *standards*, the EPCA does not preempt the Bill, and urges the Court to deny Plaintiffs' requested relief.  ECF No. 42-2 at 20–29. Although this action is in its infancy, the parties agree that the Plaintiffs' claim turns on this pure question of law, namely the interpretation of the EPCA preemption terms.  Thus, neither party objects to the Court reaching this question on summary judgment.  *See* ECF No. 42 (the County moving for summary judgment in the alternative); ECF No. 51 (Plaintiffs cross-moving for summary judgment).    However, before reaching the merits, the Court must satisfy itself of its power to hear the case.

## II.    Jurisdiction

### A.    Standing

The County first argues that dismissal is warranted because no plaintiff has standing to bring this suit.  ECF No. 42-2 at 17.  A party's standing to maintain an action "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  This "standing requirement applies to each claim that a plaintiff seeks to press." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014)).  The plaintiff bears the burden of demonstrating "standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  That said, only one plaintiff must demonstrate it has standing for the case to proceed*.  See Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)).

To establish standing, a plaintiff must show that it (1) suffered an injury in fact that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable" to the defendant's conduct; and (3) that the injury can be "redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180–81 (citing *Lujan*, 504 U.S. at 560–61). The County argues solely that Plaintiffs cannot satisfy the injury-in-fact requirement because the alleged injuries flowing from Bill 13-22 are "speculative," and based on yet-to-be enacted "regulations" that do not go in effect until December 31, 2026. ECF No. 42-2 at 17–18. The Court disagrees.

The gravamen of the alleged injury is that Bill 13-22 effectively bans gas appliances in any new construction. From this, Plaintiff Washington Gas Light Company ("WGL") has alleged a sufficiently concrete and particularized injury to confer jurisdiction. WGL's Executive Vice President & President, Donald Jenkins, attests that WGL provides natural gas service to more than 1.2 million area customers, 241,000 of whom are Montgomery County residents, which make up 47% of WGL's Maryland customer base. ECF No. 32-8 ¶¶ 2–3. Further, Jenkins states that larger corporate customers would otherwise purchase gas for new construction projects but, with the passage of Bill 13-22, will no longer do so because it is "[a]ll electric from here on out." *Id*. ¶¶ 6–7.

Similarly, Thomas Kettler ("Kettler"), a local homebuilder and owner of Kettler Forlines, Inc., will suffer likely injury of diminished home sales. ECF No. 32-2 ¶¶ 5–8. Kettler Forlines—a member of the Maryland Building Industry Association and the National Association of Home Builders of the United States—has built over 4,000 homes, and "natural gas has been the preferred source for heating, hot water, cooking and gas fireplaces for at least 90% of [its customers]." *Id.* ¶ 5. Were Bill 13-22 to take effect, no gas appliances will be permitted in new construction,

requiring the company to drastically retool its new construction plans, or face reasonable prospect that homebuyers will look elsewhere to build new construction. *Id.* ¶¶ 7–8. Because builders such as Kettler must decide whether gas service and appliances will be used in new development as much two years in advance of breaking ground, the injuries stemming from Bill 13-22 are neither remote nor speculative. *Id. See also* ECF No. 32-2 (Douglas Tyler Wood declaring the "long lead time" of the decision whether to use gas in new construction "has an effect now on the choices builders must make regarding the use of gas in custom homes."). This is so even though the new building standards will not take effect until, at the *latest*, the end of this year. ECF No. 42-8 at 5. *See, e.g.*, *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 322 (N.D.N.Y. 2025) (standing conferred even when building code prohibition did not take effect for six months) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024). These injuries are sufficiently concrete and imminent to confer standing. *Mulhern Gas Co.*, 798 F. Supp. 3d at 321.

### B.    Ripeness

The County alternatively argues that the Court lacks jurisdiction because the claims are not ripe for judicial review. ECF No. 42-2 at 13. *See South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). "Ripeness 'concerns the appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)). The Plaintiffs bear the burden of proving that the suit is ripe. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). The ripeness inquiry is necessary to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to protect against "judicial interference

until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

Ripeness depends on two principal factors: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey*, 721 F.3d at 240 (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).  As to an issue's "fitness," where, as here, the dispute is "purely legal" and the present controversy does not depend on "future uncertainties," the matter is sufficiently fit for review.  *Miller*, 462 F.3d at 319 (citation omitted).  But where the challenged law or policy is not sufficiently "crystalized," and thus subject to change, the Court may conclude the claim is best deferred.  *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (quoting *City of Houston v. Dep't of Hous. and Urb. Dev.*, 24 F.3d 1421, 1430–31 (D.C. Cir. 1994)) (internal quotation marks omitted).  *See also South Carolina*, 912 F.3d at 730.

The County principally contends that the claim lacks fitness "because the full scope of exemptions and the law's impact will not be known until the County Executive promulgates" the regulations that establish the "all-electric building standards."  ECF No. 42-2 at 14.  But this "exemption" argument misapprehends Plaintiffs' fundamental contention—that the Bill's complete *ban* on using gas appliances in new construction is preempted under the EPCA.  This question is narrowly circumscribed and a well-defined question of law.  It is also fit for resolution now because if, as Plaintiffs urge, the EPCA preempts Bill 13-22, then no further regulatory work on the Bill's exceptions will matter.  ECF No. 51-1 at 18 (citing Montgomery County Code § 8-14D(a)).  *See Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985) ("The issue presented in this case is purely legal, and will not be clarified by further factual development.").

By contrast, if the EPCA does not preempt the Bill, then its roll-out may proceed as planned. The suit, therefore, is ready for judicial review.

As for hardship to the parties should the Court withhold consideration, the inquiry turns on whether the plaintiff has suffered injury from the challenged action or whether the effects of adjudicating the dispute remain "wholly speculative." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)). Several plaintiffs have attested that the construction industry requires advance planning and approval such that the effects of the Bill are felt now, even though the actual implementing regulations may be several months away. *See* ECF No. 32-2 (Kettler declaration); ECF No. 32-3 (Douglas Tyler Wood declaration); ECF No. 32-4 (Perry McGuire declaration); ECF No. 32-8 (Jenkins declaration). These "long lead times" and advanced decision-making in this industry mean that businesses have already been affected by the impending gas ban. *See, e.g.*, ECF No. 32-2 (Kettler declaration). Accordingly, Plaintiffs have suffered injury, and the matter is ripe for resolution now. *But cf. Reg'l Mgmt. Corp.*, 186 F.3d at 465 (holding that delay in adjudication of the policy would have "no present effect" on the plaintiffs, "much less a direct one" on its day-to-day business) (internal quotation marks and citation omitted). The matter is ripe for review.

The Court next turns to the merits of the action.

**III.    Whether the EPCA Preempts Bill 13-22**

The Supremacy Clause of the Constitution "renders federal law 'the supreme Law of the Land,'" state law "'to the Contrary notwithstanding.'" *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) (quoting U.S. Const. art. VI, cl. 2). Federal law may preempt state law in three ways: by "express preemption," by "field preemption," or by "conflict preemption." *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005). Plaintiffs singularly contend that the EPCA

expressly preempts Bill 13-22 through the EPCA's preemption provisions. A state law is expressly preempted when Congress says so by federal legislation. *Id.* at 454. Accordingly, the text of the statute itself remains "the best evidence of Congress' preemptive intent." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 761 (4th Cir. 2018) (quoting *Commonwealth of Puerto Rico v. Franklin California Tax-free Tr.*, 579 U.S. 115, 125 (2016)).

Plaintiffs argue that because Bill 13-22 bans all gas-powered appliances, it sets the "energy use" of appliances at "zero" and so it is preempted under the EPCA. ECF No. 32 ¶ 56. Plaintiffs point specifically to the provision of the EPCA that reads, "for any covered product, no State regulation concerning the . . . *energy use* . . . of such covered product shall be effective with respect to such product unless" the regulation meets exceptions not applicable here. 42 U.S.C. § 6297(c) (emphasis added). Further, say the Plaintiffs, the EPCA defines "energy use" as "the *quantity* of energy directly consumed by a consumer product *at point of use*" and as "determined in accordance with test procedures under section 6293 of this title." 42 U.S.C. § 6291(4) (emphasis added). From this, Plaintiffs maintain that the natural and plain meaning of "energy use" of a covered product at the "point of use" means the quantity of gas used at the place where the appliance is installed and used by the consumer. *See* ECF No. 51-1 at 31 (explaining that "the quantity of energy directly consumed by a consumer product at point of use" should be interpreted to mean the quantity of energy directly consumed by a consumer product at "the place where or time when a product or service is used") (quoting Cambridge English Dictionary Online (2025)). Thus, say Plaintiffs, because Bill 13-22 regulates "energy use" by banning gas appliances at the "point of use," the EPCA preempts the Bill.

In so arguing, Plaintiffs principally rely on *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). There, the Ninth Circuit held that the EPCA preempted a county

ordinance that prohibited installation of gas lines in new construction. The Court reasoned that because the "EPCA is concerned with the end-user's ability to *use* installed covered products at their intended final destinations," then the ordinance impermissibly regulated "energy use" by setting the quantity to be used in new construction at "zero." *Id.* at 1101–02 (emphasis in original). Thus, the majority explained, a prohibition on natural gas infrastructure that reduces the energy consumed by natural gas to "zero," in effect, regulates the "quantity of energy" in new construction, which the EPCA expressly preempts. *Id.*

The County, on the other hand, embraces Judge Friedland's dissent in *California Restaurant Association*, in which she faults the majority for "misinterpret[ing] the statute's key terms to have colloquial meanings instead of the technical meanings required by established canons of statutory interpretation." *California Rest. Ass'n*, 89 F.4th at 1120. Judge Friedland grounded her dissent in a careful reading of the EPCA, as informed by its history, amendments, and the use of the operative terms within the energy regulatory industry. *Id.* at 1120–22. Judge Friedland explained that the EPCA, from its inception, was designed to set "uniform appliance efficiency standards," for covered products that proceed to market, and *not* to create a "consumer right to use" any given appliance. *Id.* at 1121. Equally important, noted Judge Friedland, the EPCA is a "technical statute" that proscribes the method for setting and enforcing national efficiency standards of covered products before they are put into the stream of commerce. *Id.* Thus, the critical terms here—"energy use" and "point of use"—must be given their technical and industry-relevant meanings as "instruction to [the Department of Energy] and manufacturers." *Id.* at 1123. Judge Friedland explains,

> Congress was relying on the technical meaning of the term to convey that the "energy use" of an appliance under EPCA does not include indirect energy consumption upstream in the supply chain. That instruction was needed because other regulators at the time *did* consider such indirect energy consumption . . . .

[And] [i]ndustry and regulatory sources consistently use the term "point of use" in this technical sense, and many expressly recognize that EPCA does so as well.

*Id.* (internal citations omitted) (emphasis in original).

When giving such terms the proper technical construction, the gas ban ordinance, Judge Friedland concluded, was not preempted. The ordinance "simply directs consumers to one set of products with one set of federal efficiency standards (electric appliances) over another set of products with different federal efficiency standards (gas appliances)" but in so doing, does not regulate "energy use" at the "point of use" as specifically defined in the EPCA. *Id.* (citing 42 U.S.C. § 6295(e)(1)(A), (C)).

This reading of these terms aligns with the EPCA's legislative history and purpose. By enacting the EPCA, "Congress intended to preempt state energy efficiency standards, testing procedures, and consumer labeling requirements." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005). *See also* H.R. Rep. No. 94-340, at 95 (1975) ("[I]t is the Committee's hope that voluntary efforts by manufacturers and better consumer information will make energy efficiency standards unnecessary; however, should the labeling program not suffice, energy efficiency standards should be utilized to achieve the goals of the legislation."); *id.* at 17 (describing the energy labeling and efficiency standards for consumer products). Bill 13-22's mandate for "all electric" new construction touches on none of those efficiency standards, consumer labeling, or testing procedures relevant to covered appliances. *See also also Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.,* No. CV 24-10482 PA (PDX), 2025 WL 2427844, at *6 (C.D. Cal. July 22, 2025). The Bill instead prohibits a category of appliances regardless of whether they meet the efficiency or labeling standards under the EPCA.

11

Moreover, reading the terms "energy use" and "point of use" as Plaintiffs urge would run counter to the EPCA's web of implementing regulations. 10 C.F.R. § 429.12, for example, requires that covered appliances meet energy-use testing standards under 42 U.S.C. § 6293 *before* the appliance is offered for sale. *See* 10 C.F.R. § 429.12 ("Each manufacturer, *before* distributing in commerce any basic model of a covered product or covered equipment subject to an applicable energy conservation standard . . . shall submit a certification report to DOE . . .") (emphasis added). "If, as Plaintiffs contend, 'energy use' refers to the amount of energy a product actually consumes in the hands of a consumer, then this rule would be impossible to implement." *Ass'n of Contracting Plumbers of City of New York, Inc.*, 2025 WL 843619, at *5. Likewise, 16 C.F.R. § 305.17 (water heaters), 16 C.F.R. § 305.18 (air conditioning), 16 C.F.R. § 305.19 (pool heaters) all regulate how manufacturers must label such products before the products enter the market. These regulations would make little sense if "energy use" refers to the quantity of energy used *after* the product was sold to the consumer.

Nor is the Court persuaded that "[a]t the very least," Bill 13-22 "qualifies as a regulation 'concerning' the amount of natural gas EPCA-covered appliances consume since it makes it impossible for those appliances to consume any [zero] natural gas whatsoever at the point of use." ECF No. 51-1 at 35. True, the EPCA preempts state law "concerning the . . . energy use" of "covered products." 42 U.S.C. § 6297(c). However, "Congress' use of the word 'concerning' does not create a limitless preemption; the regulation at issue must still relate to or be about or regarding the 'energy use' of a covered product for preemption to apply." *Mulhern Gas Co.*, 798 F. Supp. 3d at 326. This Court has already concluded that Bill 13-22 simply does not regulate "energy use" as the term is understood in the EPCA. *See supra* pp. 10–12. For the same reason, the Bill does not "concern" the energy use of a covered product such that the Bill is preempted.

For these reasons, the Court agrees with Judge Friedland and joins several lower courts in adopting her construction of the EPCA's preemption provisions. *See Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 23-CV-11292, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) (prohibition on the use of fossil fuels in new residential construction); *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304 (N.D.N.Y. 2025) (prohibition on the installation of fossil-fuel equipment and building systems in new construction). *See also Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.,* No. CV 24-10482 PA (PDX), 2025 WL 2427844, at *1 (C.D. Cal. July 22, 2025) (zero-nitrogen oxide emission standard on certain categories of natural gas appliances). After all, "when a statute, like this one, is 'addressing a . . . technical subject, a specialized meaning is to be expected." *Van Buren v. United States*, 593 U.S. 374, 389 n.7 (2021) (interpreting the Computer Fraud and Abuse Act of 1986) (citation omitted). *See also id.* at 388 (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020)) ("When 'a statute includes an explicit definition' of a term, '[the Court] must follow that definition, even if it varies from a term's ordinary meaning.'"). The EPCA, therefore, does not preempt Bill 13-22. Summary judgment must be granted in favor of Montgomery County and against Plaintiffs.

## IV.    Conclusion

Based on the foregoing, the Court concludes that the EPCA's preemption provisions do not reach Bill 13-22. Because the Bill does not regulate "energy use" at the "point of use," its "all electric" mandate for new construction is not preempted. ECF No. 42-5 at 4. Montgomery County's motion, construed as one for summary judgment, is GRANTED and Plaintiffs cross-motion for summary judgment is DENIED.

A separate order follows.

03/25/2026                                           /s/

Date                                               Paula Xinis
United States District Judge